UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE CO., as subrogee of MATTPAK, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | 09 C 5088 |
| v. | ) ) | Judge George M. Marovich |
| WINSTON COMPANY, INC., and JACOBSON TRANSPORTATION COMPANY INC., | ) ) ) ) | |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, as subrogee of F&M BUILDING PARTNERSHIP, | ) ) ) | |
| | ) | 09 C 5176 |
| Plaintiff, | ) ) | Judge George M. Marovich |
| v. | ) ) | |
| WINSTON COMPANY, INC., and JACOBSON TRANSPORTATION COMPANY, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

After a fire at a warehouse, two insurance companies filed separate suits against

defendants Winston Company, Inc. ("Winston") and Jacobson Transportation Company, Inc.

("Jacobson"). The Court consolidated the two cases, because they arise out of the same fire. In

the first case, 09-cv-5088, plaintiff Hartford Casualty Insurance Co. ("Hartford"), as subrogee of

Mattpak, Inc. ("Mattpak"), filed negligence claims against Winston and Jacobson.[1] In the

second case, 09-cv-5176, plaintiff Westfield Insurance Co. ("Westfield"), as subrogee of F&M

Building Partnership ("F&M"), filed negligence claims against Winston and Jacobson.[2] In the

second case, defendant Winston filed a cross-claim for contribution against defendant Jacobson.

Before the Court are: (1) Jacobson's motion for summary judgment as to Hartford's

negligence claim against it; and (2) Jacobson's motion for summary judgment as to Westfield's

negligence claim against it and as to Winston's cross-claim for contribution. The Court is ruling

on these motions in the same memorandum opinion because most of the facts and arguments are

the same. For example, Jacobson's statement of facts with respect to Hartford was nearly

identical to its statement of facts with respect to Westfield. Both Hartford and Westfield

conceded most of the facts in Jacobson's statement of fact as to the motion applicable to them.

Winston filed a one-paragraph response in which it adopted the responses of Hartford and

Westfield to Jacobson's motions against them. For the reasons set forth below, the Court grants

Jacobson's motion for summary judgment in case 09-cv-5088. The Court grants in part and

denies is part Jacobson's motion for summary judgment in case 09-cv-5176.

## I.    **Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like

considered in connection with a motion for summary judgment. The Court enforces Local Rule

56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the

Court. For example, facts included in a party's brief but not in its statement of facts are not

---

[1]The Court has jurisdiction over 09-cv-5088, because the parties are diverse and the
amount in controversy is greater than $75,000.00. Plaintiff Hartford is a citizen of Connecticut.
Defendant Winston is a citizen of Oklahoma, and defendant Jacobson is a citizen of Iowa.

[2]The Court has jurisdiction over 09-cv-5176, because the parties are diverse and the
amount in controversy is greater than $75,000.00. Plaintiff Westfield is a citizen of Ohio.

considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of its duty to support the fact with admissible evidence. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. At the summary judgment stage, it does not suffice to rely on complaint allegations. Nor is it enough for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth *admissible* evidence of his or its version of the fact.

The following facts are undisputed as to all parties to these motions unless otherwise noted.

On June 5, 2008, a fire destroyed some portion (perhaps all–it is not clear from the parties' submissions) of a warehouse located at 2900-2950 Commerce Street in Franklin Park, Illinois. The warehouse was owned by plaintiff Westfield's subrogor, F&M. During the relevant time, plaintiff Hartford's subrogor, Mattpak, leased at least a portion of the warehouse. After the fire, the fire department determined that the fire was caused by spontaneous combustion of Oxy-Kem, a product which Mattpak was storing within its portion of the warehouse.

Oxy-Kem is a cleaning product produced by Winston, which is a defendant in this suit but is not a party to these motions. The primary ingredient of Oxy-Kem is sodium percarbonate. Sodium percarbonate's decomposition is catalyzed by water and heat. A problem with the decomposition of sodium percarbonate is that it produces a lot of heat and oxygen and, thus, can

cause fire. The amount of heat that is required to cause sodium percarbonate to self-heat depends on the quantity of sodium percarbonate, such that larger packages have lower heat thresholds than do smaller packages.

The June 2008 fire was not the first time Oxy-Kem had been involved in a warehouse fire. Winston, the maker of Oxy-Kem, experienced a fire involving Oxy-Kem at its warehouse in 2006. After the 2006 fire, Winston changed procedures in an attempt to avoid fire. First, Winston hired a night guard to check Oxy-Kem packaging for signs, such as heat or brown spots, of a chemical reaction. In addition, Winston reduced the time for blending a batch of Oxy-Kem, because it suspected that the blending might have created heat and lead to a reaction.

The reason Oxy-Kem was at the Mattpak facility on June 5, 2008 is that Mattpak had purchased the Oxy-Kem from Winston, and Winston had hired Jacobson Transportation to deliver it. Mattpak is in the business of buying items in bulk and repackaging them for distribution. The shipment of Oxy-Kem that was delivered to Mattpak on June 5, 2008 was picked up at Winston on June 4, 2008 by Duane Joy ("Joy"), a driver for defendant Jacobson Transportation.

Before Joy arrived at Winston to pick up the load of Oxy-Kem, he inspected his trailer for physical damage. Hartford and Jacobson agree that Joy found no holes in the roof, but Westfield disagrees. When Joy arrived at Winston (in Tulsa, Oklahoma), a Winston employee, Jeremiah Edwards ("Edwards"), inspected the trailer (to make sure it contained no moisture) and then loaded the Jacobson trailer with eighteen pallets of Oxy-Kem. The pallets contained 2200-pound supersacks of Oxy-Kem. Edwards signed the bill of lading.

When Joy reviewed the bill of lading, he noticed that the box for "hazmat" was checked, which suggested that the load contained hazardous materials. Jacobson had stopped hauling hazardous materials and Joy was not licensed to haul hazardous materials, so Joy called his fleet

manager. Joy was told to take the load, and he did. Before leaving, Joy read Oxy-Kem's

Material Safety Data Sheet ("MSDS"), which states that heat and sources of heat are conditions

to avoid, that the product should not be stored at temperatures above 110 degrees Fahrenheit and

that the product should be stored in a cool place. Joy sealed the trailer and did not open it until

he arrived at Mattpak (in Franklin Park, Illinois) on June 5, 2008. During the trip, the weather

was sunny, clear and hot. The trailer was not air conditioned, and the vents in the trailer

remained closed during the trip.

Hartford's expert witness, Elizabeth Buc ("Buc"), opined that a chemical reaction of

Oxy-Kem likely happened in the Jacobson trailer during the trip from Oklahoma to Illinois.[3]

Buc based her conclusion on her calculation that the temperature in the Jacobson trailer during

the trip would have been higher than the outdoor temperature and that the temperature in the

trailer during the trip likely exceeded 110 degrees Fahrenheit. She also based her conclusion on

the fact that brown spots were observed when the bags containing Oxy-Kem were unloaded in

Illinois but were not observed when the product left Oklahoma. That suggested to Buc that a

chemical reaction accelerated during the trip.

## II.    Summary Judgment Standard

---

[3]Jacobson argues that Hartford cannot rely on Buc's expert report, because Hartford
failed to include an affidavit authenticating the report. The Court overrules the objection,
because Hartford submitted an authenticating affidavit. Defendant does not object to the
admissibility under Rule 702 of the Federal Rules of Evidence. In its brief, Hartford refers to the
expert report of Paul Herbert ("Herbert"), but Hartford did not include Herbert's report in its
statement of facts, so the Court does not consider Herbert's report.
    Westfield submitted four expert reports (including one from Buc) in support of its
statement of facts. Jacobson argues that the reports are not admissible because Westfield failed
to include an affidavit authenticating the reports. The Court sustains the objection (and will not
consider Westfield's expert reports), because Westfield failed to submit authenticating affidavits.
    Winston adopted the responses of Westfield and Hartford and, therefore, can take
advantage of Buc's expert report but not the expert reports submitted by Westfield.

In a diversity case, such as this one, the Court applies state substantive law and federal procedural law. *Erie RR v. Tompkins*, 304 U.S. 64, 78 (1938). Contrary to the arguments of Jacobson and Hartford, the summary judgment standard is *procedural*, and the Court will apply Federal Rule of Civil Procedure 56. *See Dawn Equip. Co. v. Micro-Trak Systems, Inc.*, 186 F.3d 981, 986 (7th Cir. 1999).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

III.   Discussion

A.   **Hartford's negligence claim against Jacobson**

In Count I of its complaint, Hartford asserts that Jacobson was negligent. To make out a claim for negligence under Illinois law, a plaintiff must show "a duty owed by a defendant to that plaintiff, a breach of duty, and injury proximately caused by the breach of duty." *Reynolds v. CB Sports Bar, Inc.*, __ F.3d __, 2010 WL 4137569, slip op. at 9 (7th Cir. Oct. 22, 2010).

If, as Hartford alleges, Jacobson owed Mattpak a duty, then Hartford has put forth

sufficient evidence from which a reasonable jury could conclude, if it believed plaintiff's

evidence, that Jacobson breached a duty.  Hartford has put forth evidence that Jacobson's driver

read a bill of lading that suggested Oxy-Kem was a hazardous material and read the MSDS that

said Oxy-Kem should not be subjected to heat above 110 degrees Fahrenheit.  Jacobson

transported the Oxy-Kem in a trailer that was not air conditioned.  Plaintiff's expert opined that

the temperature in the trailer likely exceeded 110 degrees.  From this evidence, a reasonable jury

could conclude that Jacobson breached a duty.

The real question in this case is whether Hartford has established that Jacobson owed

Mattpak a duty.  Whether a duty exists is a question of law for the court.  *City of Chi. v. Beretta*

*U.S.A. Corp.*, 213 Ill.2d 351, 391 (Ill. S.Ct. 2004).  To this question, Hartford devotes only three

paragraphs of its brief, and Hartford fails to cite a single case to establish that such a duty exists.

The only legal authority Hartford cites is a federal regulation.  Hartford argues:

According to FMCSA guidelines, "reasonable care should be taken to prevent
undue rise in temperature of containers and their contents during transit."  Federal
Motor Carrier Safety Association Rules and Regulations § 177.834(h).  The
standard set forth by the FMCSA is applicable to all surface interstate shipments,
and that reasonableness standard certainly applied during its June 5, 2008
transport of Oxy-Kem from Oklahoma to Illinois.

(Hartford's brief at 6-7).  Hartford is probably referring to 49 C.F.R. § 177.834(h), which states:

(h) Precautions concerning containers in transit; fueling road units.  Reasonable
care should be taken to prevent undue rise in temperature of containers and their
contents during transit.  There must be no tampering with such container or the
contents thereof nor any discharge of the contents of any container between point
of origin and point of billed destination.  Discharge of contents of any container,
other than a cargo tank or IM portable tank, must not be made prior to removal
from the motor vehicle.  Nothing contained in this paragraph shall be so construed

as to prohibit the fueling of machinery or vehicles used in road construction or maintenance.

49 C.F.R. § 177.834(h). "Under Illinois law, a violation of a safety standard is relevant, though not conclusive, in determining whether a duty exists." *Pierce v. Chicago Rail Link, LLC*, Case NO. 03 C 7524, 2005 WL 599980 at *11 (N.D. Ill. March 15, 2005).

Although Hartford asserts (without citation to legal authority), that this regulation applies to all interstate shipments, including Jacobson's shipment of the Oxy-Kem, Jacobson argues that it applies only to the transportation of hazardous material. The Court agrees with Jacobson. The regulation, by its terms, applies only to the shipment of hazardous materials. *See* 49 C.F.R. § 177.800(a) ("Purpose and scope. This part prescribes requirements, in addition to those contained in parts 171, 172, 173, 178 and 180 of this subchapter, that are applicable to the acceptance and transportation of hazardous materials by private, common, or contract carriers by motor vehicle."). Hartford has not shown that sodium percarbonate is a hazardous material for purposes of the regulation. In fact, sodium percarbonate is not listed as a hazardous substance in 49 C.F.R. § 172.101, App. A, and it is not listed as a hazardous material at 49 C.F.R. § 172.101 Table (List of Hazardous Materials). Accordingly, the Court concludes that the regulation Hartford cites does not establish that Jacobson Transportation owed a duty to Mattpak.

Next, Hartford argues (without citation to any caselaw) that Jacobson had a duty because Jacobson's employee took it upon himself to read the bill of lading. That would not seem to be enough to establish a duty. The question of duty "turns largely on public policy considerations, informed by consideration of four traditional factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant." *Beretta*, 213 Ill.2d at

391. Hartford does not explain how these factors establish that Jacobson owed a duty to Mattpak, and the Court does not think these factors suggest the existence of such a duty. The injury here is not just the destruction of the Oxy-Kem itself but the destruction caused by the fire in the warehouse, which was caused by the Oxy-Kem (and more specifically, if Hartford's evidence is believed, by the heat in the Jacobson trailer during transportation). The possibility of Oxy-Kem causing a fire at a warehouse hours after it was delivered in seemingly fine condition might be foreseeable to the maker of Oxy-Kem (Winston, the manufacturer, had experienced such a fire) or to anyone who understands the chemistry of Oxy-Kem. It would not, however, be foreseeable to the average person or even the average driver. Although the driver read the bill of lading and the MSDS, those documents would not have given the driver reason to believe that the Oxy-Kem that he delivered in seemingly good condition could already be undergoing a chemical reaction that would lead to a fire many hours later. The burden of warning about the possibility of fire would seem better placed on the manufacturer than the motor carrier, and the duty of watching for signs of fire at the warehouse hours after delivery would seem better placed on the warehouse than on the motor carrier. It would be an excessive burden for motor carriers to have to assign guards to each warehouse to which it delivers each day.

For these reasons, the Court concludes that Hartford has failed to meet its burden of establishing that Jacobson Transportation owed Mattpak a duty. Accordingly, Jacobson's motion for summary judgment is granted.

### B. Westfield's negligence claim against Jacobson

Like Hartford, Westfield alleges that Jacobson was negligent. Like Hartford, Westfield fails to establish that Jacobson owed F&M (Westfield's subrogor) a duty.

Without a duty, there can be no negligence. *American Nat'l Bank & Trust Co. of Chi. v. National Advertising Co.*, 149 Ill.2d 14, 26 (Ill. S.Ct. 1992) ("Unless a duty is owed, there is no negligence."). No matter what facts Westfield marshals, it cannot survive this motion for summary judgment without convincing this Court that Jacobson owed F&M a duty. Westfield makes an argument identical (nearly word-for-word) to Hartford's as to why it believes Jacobson owed a duty to F&M. Like Hartford, Westfield's only citation to legal authority is to 49 C.F.R. § 177.834(h). As the Court explained above, that regulation does not apply to the transportation of Oxy-Kem. Westfield fails to cite a single case for the proposition that Jacobson owed F&M a duty. For the reasons explained above, Westfield has failed to convince this Court that Jacobson owed F&M a duty.

For these reasons, Jacobson's motion for summary judgment with respect to Westfield is granted.

## C.    Winston's contribution claim against Jacobson

In the Westfield case, defendant Winston filed a cross-claim against Jacobson for contribution. In its cross-claim, Winston prays that, should the Court enter a judgment in favor of plaintiff Westfield and against defendant Winston, the Court order Jacobson to pay Winston its proportionate share of fault. Thus, Winston's cross-claim is not a claim for damage to the Oxy-Kem itself (which would have to be brought under the Carmack Amendment[4]) but a claim for contribution.

---

[4] *See North American Van Lines, Inc. v. Pinkerton Security Systems, Inc.*, 89 F.3d 452, 456 (7th Cir. 1996) ("The Carmack Amendment . . . preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments.").

In moving for summary judgment on Winston's cross-claim, Jacobson argues that its only duty was to deliver the Oxy-Kem "in the same condition" without damage, and that there is no evidence that the Oxy-Kem was damaged or not delivered in the same condition. This is not a winning argument. Hartford (whose response Winston adopted) put forth evidence from which a reasonable jury could conclude that Oxy-Kem was damaged while Jacobson was transporting it from Oklahoma to Illinois. Specifically, a jury could believe the evidence that the weather was dry and hot and that the vents in the Jacobson trailer were closed. A jury could also believe Buc's opinion that the temperature inside the trailer was hot enough to cause Oxy-Kem to begin reacting.

In short, Jacobson has failed to meet its burden of establishing that there are no issues of material fact and that it is entitled to judgment as a matter of law on Winston's cross-claim for contribution. Jacobson does not, for example, make the argument that Winston cannot prevail on its cross-claim for contribution because Westfield (as subrogee of F&M) has no tort claim against Jacobson. *See Sompo Japan Ins. Inc. v. Nippon Cargo Airlines Co. LTD.*, 522 F.3d 776, 786 (7th Cir. 2008) ("A party seeking contribution . . . must show that the plaintiff potentially had 'a cause of action sounding in tort against *both* the party seeking contribution and the party from whom contribution is sought.'").

Because Jacobson has not met its burden of showing that there are no issues of material fact and that it is entitled to judgment as a matter of law, the Court denies Jacobson's motion with respect to Winston's cross-claim.

**IV.     Conclusion**

For the reasons set forth above, the Court grants defendant Jacobson's motion for summary judgment as to Hartford in 09-cv-5088.  In case 09-cv-5176, the Court grants in part and denies in part Jacobson's motion.  The Court grants defendant Jacobson's motion for summary judgment as to plaintiff Westfield's negligence claim.  The Court denies defendant Jacobson's motion for summary judgment as to Winston's cross-claim.

ENTER:

George M. Marovich
United States District Judge

DATED:  November 16, 2010